IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> $592,267.00 IN USDT TRACEABLE TO CRYPTOCURRENCY WALLET TSuA…V7Ao, <br><br> Defendant *In Rem*. | Civil No. 1:25-cv-1084 |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

COMES NOW the plaintiff, the United States of America, by and through its counsel, Margaret Moeser, Chief of the Money Laundering and Asset Recovery Section of the U.S. Department of Justice (MLARS), Joshua L. Sohn, MLARS Trial Attorney, and Ariana Lazzaroni, MLARS Trial Attorney, and brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. The United States brings this action in rem seeking the forfeiture of all right, title, and interest in the defendant in rem identified in the case caption above (the "Defendant Property").

2. The Defendant Property constitutes things of value intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1) (Distribution of Cocaine, a Schedule II controlled substance) and 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, a Schedule II controlled substance) and as such, it is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

1

## THE DEFENDANT *IN REM*

3. The Defendant Property is $592,267.00 USDT.

4. USDT, also known as Tether, is a crypto currency that resides on multiple blockchains.

5. The value of USDT is tied to the value of the U.S. dollar.

6. Thus, one unit of USDT is represented to be backed by one U.S. dollar in Tether's reserves, making it what is known as a "stablecoin."

7. USDT is issued by Tether Ltd.

8. USDT is hosted on the Ethereum and Tron blockchains, among others.

9. A virtual currency wallet allows users to store, send, and receive virtual currencies.

10. A virtual currency wallet can hold many virtual currency addresses at the same time.

11. Virtual currency addresses are the specific virtual locations to or from which such currencies are sent and received.

12. A virtual currency address is analogous to a bank account number and is represented as a string of letters and numbers.

13. Each virtual currency address is controlled through a unique corresponding private key, a cryptographic equivalent of a password needed to access the address.

14. Only the holder(s) of an address's private key can authorize a transfer of virtual currency from that address to another address.

15. $592,265.00 USDT was transferred to the undercover wallet TSuA…V7Ao in multiple transactions between February 14, 2024 and February 28, 2024.

16. Two additional USDT were sent to the undercover wallet on February 12, 2024 and

February 28, 2024.

17. The $592,267.00 USDT transferred into undercover wallet between February 12, 2024 and February 28, 2024 is the Defendant Property.

18. The Defendant Property is in the custody of, and under the control of, the United States Marshals Service, which is headquartered in the Eastern District of Virginia.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over actions commenced by the United States under 28 U.S.C. § 1345 and over forfeiture actions pursuant to 28 U.S.C. §1355(a).

20. In rem jurisdiction and venue are proper in this District under 28 U.S.C. § 1355(b)(1)(B) and 28 U.S.C. § 1395(b) because the private key for accessing the Defendant Property is stored on a hardware device in this District and the Defendant Property is in the custody of the United States Marshals Service, which is headquartered in this District.

## FACTUAL ALLEGATIONS

21. As part of an undercover investigation, investigators used a Confidential Source ("CS") to offer members of a Transnational Criminal Organization ("TCO") cocaine in Mexico City and its transportation to Los Angeles.

22. The CS advised law enforcement that a priority target member of the TCO ("priority target") wanted to purchase cocaine and would pay for the cocaine using USDT.

23. Law enforcement developed a plan with the CS to tell the priority target that the CS knew a source of supply in Mexico City.

24. The CS obtained an additional phone and set up three-way communications between the CS, the priority target, and the fictitious supplier.

25. The CS controlled the communications for the fictitious supplier's phone.

26. Law enforcement established an undercover cryptocurrency wallet ("UC wallet") at address TSuA…V7Ao so that the priority target could make payments for the cocaine he believed he was purchasing.

27. Law enforcement sent the UC wallet to the CS so that it could be sent to the priority target.

28. Once negotiations were completed for the cocaine and transport fees, the UC wallet at TSuA…V7Ao received the following payments on the following dates and in the following amounts:

| February 14, 2024 | $90,000 |
| February 15, 2024 | $200,000 |
| February 15, 2024 | $105,000 |
| February 16, 2024 | $60,000 |
| February 16, 2024 | $15,000 |
| February 28, 2024 | $122,265 |

29. There were also two $1 test payments sent to the UC wallet making the total USDT in the undercover wallet $592,267.

30. Once the payments were made, the CS coordinated with the priority target to pick up 65 kg of drugs.

31. Investigators saw screenshots of messages between the CS and the priority target that showed the target transferring to the CS the contact information of someone, "Alex", a phone number, and the words "65 pcs."

32. The CS also provided law enforcement with screenshots of messages between the

4

CS and "Alex."

33. The CS and "Alex" agreed to meet at the Pride truck stop in Yucca, Arizona, on March 5, 2024.

34. "Alex" shared with the CS that he would be in a blue Volvo and would leave the truck stop on the morning of March 6, 2024.

35. Law enforcement met with the CS east of the Pride truck stop in Yucca, Arizona at 5:40 pm on March 5, 2024.

36. Law enforcement provided the CS with multiple bags containing 65 kg of sham cocaine and confirmed that the CS did not have any other illicit substances on his/her person or in his/her vehicle.

37. Law enforcement confirmed that the CS's audio/video monitoring device was working.

38. Law enforcement followed the CS to the Pride truck stop.

39. When the CS arrived at the Pride truck stop, the CS pulled up to a blue Volvo semi-truck with the hood open.

40. The CS provided the subject from the truck multiple bags and left the parking lot.

41. The CS also provided law enforcement with multiple screen shots of communications with the priority target regarding the delivery of the 65 kilograms of cocaine.

42. Law enforcement conducted surveillance on the blue Volvo and observed its trailer had a license plate of Ontario S9086A and the truck had a license plate of Ontario PA84685.

43. Investigators continued surveillance on the blue Volvo truck after it departed the lot at approximately 6:45 am on March 6, 2024 into Holbrook, Arizona.

44. Around 10:45 am on March 6, 2024, investigators conducted a traffic stop

involving the truck with plate PA84685.

45. At this stop, investigators identified the truck driver as A.P.

46. Law enforcement also recovered the fake cocaine that was provided to the CS.

47. A.P., a Canadian citizen, said that he did not know what the contents of the bag were, and said he was being paid to transport the bags but did now know where he was taking them.

48. A.P. provided consent to search his phone.

49. A search of the phone determined that several messages had been deleted.

50. After law enforcement's seizure of the fake cocaine, the priority target contacted the CS to let him know that the cocaine had been seized.

51. On April 12, 2024, the Defendant Property was transferred from the UC wallet controlled by law enforcement to the United States Marshals Service.

**CLAIM FOR RELIEF**

(Forfeiture under 21 U.S.C. § 881(a)(6))

52. The United States incorporates by reference Paragraphs 1 through 51 as if fully set forth herein.

53. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture, "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

54. As set forth above, the Defendant Property constitutes things of value intended to be used to facilitate violations of 21 U.S.C. § 841(a)(1) (Distribution of Cocaine, a Schedule II

controlled substance) and 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, a Schedule II controlled substance).

55.   As such, the Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that judgment be entered in its favor against the Defendant Property; that pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed; that the defendant property be forfeited to the United States of America for disposition according to law; that plaintiff be awarded its costs and disbursements in this action; and for such further relief as this Court may deem just and proper.

Dated: June 30, 2025

Respectfully submitted,

Margaret Moeser, Chief
Money Laundering and Asset
Recovery Section (MLARS)

By:   */s/ Joshua L. Sohn*
Joshua L. Sohn
Trial Attorney, MLARS
1400 New York Ave. NW
Washington, DC 20530
Office Number: (202) 353-2223
Facsimile Number: (202) 616-2547
Email Address:   joshua.sohn@usdoj.gov

/s/ *Ariana Lazzaroni*
Ariana Lazzaroni
Trial Attorney, MLARS
Department of Justice
1400 New York Ave
Washington, DC 20530
Office Number: (202) 615-8125
Email Address:   ariana.lazzaroni@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

## **VERIFICATION**

I, Anthony Morse, Task Force Officer, Drug Enforcement Administration, declare under penalty of perjury as provided by 28 U.S.C. §1746, that the foregoing Complaint for Forfeiture *in Rem* is based on information known by me personally and/or furnished to me by various federal, state, and local law enforcement agencies, and that everything contained herein is true and correct to the best of my knowledge.

Executed at __Eastern District_____, Virginia this __4___ day of __June__, 2025.

ANTHONY MORSE (Affiliate)
Digitally signed by ANTHONY MORSE (Affiliate)
Date: 2025.06.04 13:54:40 -07'00'

Anthony Morse
Task Force Officer
Drug Enforcement Administration